ACURA OF BELLEVUE; Alderwood Motors Inc.; Alley Chevrolet; Art Gamblin Motors; Aurora Toyota; Bellevue Lincoln Mercury; Bellingham Chrysler Center; BMW/Subaru of Bellevue; Bowen Scarff Ford/Volvo; Brewer Chrysler Plymouth; Brien Motors Inc.; Brooks Biddle Chevrolet; Burien Nissan; Burien Toyota Inc.; Capitol Coachman; Cornforth–Campbell Motors; Dwayne Lane's Chrysler Plymouth; Evergreen Sportscars Inc. dba Everett Mazda; Evergreen Ford; Fugate Ford Mercury; Glen Grant Chevrolet Geo Mazda Inc.; Good Chevrolet; Gubrud Motor Co. dba Gordon Nissan; Harrington Chevrolet Geo; Hinton Chevrolet Olds Pontiac Nissan dba Hintons; Honda of Kirkland; Honda Auto Center of Bellevue; Huling Bros.; Lee Johnson Chevrolet; Lexus of Seattle; Lynnwood Dodge; Moceri's Puyallup Chrysler Plymouth Inc.; North Seattle Chrysler; Performance Jeep Eagle; Pontiac GMC Truck of Lynnwood; Prestige Ford; Rodland Toyota; Saturn of Bellevue; Saturn of Lynnwood; Sound Ford Inc.; S & K Motors Inc. dba Sound Mazda, Sound Hyundai, Sound Suzuki and Buy Here Pay Here; Seven Motor Corp. dba Sound Subaru Peugeot & Mitsubishi; Southgate Ford; Tacoma Dodge Inc.; Thomason Ford Toyota; West Hills Honda; Winner Lincoln Mercury; Totem Hill Pontiac GMC; Klein Honda; Grey Chevrolet Inc.; Pioneer Ford Inc., Plaintiffs–Appellants,

v.

Robert B. REICH, Secretary of the Dep't of Labor; Department of Labor, Wage and Hour Division; William Buhl, Administrator of the Dep't of Labor, Wage & Hour Division, Regions 9 & 10; Gordon L. Wilson, District Director of the Dep't of Labor; United States of America, Defendants–Appellees.

No. 95–35509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1996.

Decided July 17, 1996.

Richard P. Lentini, Ryan, Swanson & Cleveland, Seattle, Washington, for plaintiffs-appellants.

Jeffery Clair, United States Department of Justice, Washington, D.C., for defendants-appellees.

Before: BROWNING and T. G. NELSON, Circuit Judges, and SMITH, District Judge.*

FERN M. SMITH, Judge.

Plaintiffs/appellants appeal the district court's dismissal of their action for lack of subject matter jurisdiction. Appellants brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–705, against the Secretary and other personnel of the Department of Labor (collectively, "Department") challenging both a Department Administrator's finding that appellants violated child labor laws and the consequential assessment of monetary penalties. We affirm.

## FACTS

Plaintiffs/appellants are forty-nine car dealers in western Washington state ("dealers"). Each dealer employed sixteen and seventeen year old minors as lot attendants. According to the dealers, the lot attendants' primary duties were to clean cars and the dealership premises. Other duties, however, included moving cars on the dealers' premises, moving cars to different lots, driving to get gas, and transporting customers.

On March 18, 1994, after an investigation by the Wage and Hour Division of the Department of Labor, a Department Administrator issued a Notice of Assessments and Civil Money Penalty to each of the dealers ("the Administrator's decision"). The notices stated that the dealers had employed minors in a manner contrary to the child labor provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201–219 ("FLSA"). The dealers were found to have violated Hazardous Occupation Order No. 2, which prohibits minor employees from operating motor vehicles on public roads except when "such operation is only occasional and incidental to the minor's employment." 29 C.F.R. § 570–52. The notices identified the names of minors employed in violation of FLSA and assessed a civil monetary penalty of one thousand dollars for each seventeen year old and twelve hundred dollars for each sixteen year old employed in violation.

The notices also advised each dealer of its option to file an "exception" to the Administrator's decision, which would initiate a referral to an Administrative Law Judge ("ALJ") for hearing. The dealers timely filed exceptions on April 1, 1994. On April 7, 1994, the Department notified the dealers that their exceptions had been received and that they would be notified of a hearing date.

On July 20, 1994, before the Department had assigned the cases to an ALJ, the dealers filed the action below in federal district court against the Secretary of the Department of Labor and other agency personnel. The complaint sought judicial review under the APA and requested declaratory and injunctive relief from the Administrator's decision and the assessment of civil penalties. The complaint alleged that the decision was based on an arbitrary and capricious interpretation of the "occasional and incidental" language of Hazardous Occupation Order No. 2.

In September 1994, the Department referred the dealers' exceptions to an ALJ for administrative hearings. On September 20, 1994, the Department moved to dismiss the district court action for failure to exhaust administrative remedies, lack of finality in agency action, and lack of ripeness. Although initially ruling in favor of the dealers, the district court granted the Department's motion upon reconsideration. The district court rejected the Department's argument that the resolution of administrative appeals was a prerequisite to judicial review, but found, nonetheless, that the dealers' claims were not properly before it: "[P]laintiffs' filing of exceptions of the Administrator's decision rendered that decision *nonfinal* for purposes of judicial review, and thus the Court lacks jurisdiction over plaintiffs' claims." The dealers filed a Notice of Appeal on May 18, 1995, seeking review of the district court's dismissal.

## LEGAL STANDARDS

I.  *Standard of Review*

■ A district court's dismissal for lack of subject matter jurisdiction is reviewed *de*

---

* The Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation.

*novo. Dietary Supplemental Coalition, Inc. v. Sullivan,* 978 F.2d 560, 562 (9th Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993).

## II. *Statutory and Regulatory Framework: Oppressive Child Labor*

### A. *Fair Labor Standards Act*

. The Fair Labor Standards Act prohibits commerce involving oppressive child labor. 29 U.S.C. § 212. The FLSA defines "oppressive child labor" as hiring employees between the ages of sixteen and eighteen in any occupation that the Department of Labor "shall find and by order declare to be particularly hazardous." 29 U.S.C. § 203(*1*)(2). In Hazardous Occupation Order No. 2, the Secretary found and declared that "the occupation[ ] of motor-vehicle driver ... on any public road [or] highway vehicle driver ... on any public road [or] highway ... [is] particularly hazardous for the employment of minors between 16 and 18 years of age." 29 C.F.R. § 570.52(a). The regulation provides an exemption if the driving is restricted to daylight hours and is only "occasional and incidental to the minor's employment." 29 C.F.R. § 570.52(b)(1). Civil monetary penalties for violations of child labor laws or regulations may be imposed, not to exceed $10,-000 per employee in violation. 29 U.S.C. § 216(e).

Title 29 U.S.C. § 216(e) also addresses the finality of a monetary penalty imposed at the initial administrative level:

Any administrative determination by the Secretary of the amount of any penalty under this subsection shall be final, unless within fifteen days after receipt of notice thereof by certified mail the person charged with the violation takes exception to the determination that the violation for which the penalty is imposed occurred, in which event final determination of the penalty shall be made in an administrative proceeding after opportunity for hearing in accordance with [5 U.S.C. § 554], and regulations to be promulgated by the Secretary.

### B. *Administrative Procedures*

Once an Administrator determines that there has been a violation of the child labor laws or of the regulations promulgated thereunder, he or she is required to issue a notice to the employer setting forth, *inter alia,* the amount of the penalty, the reasons for the penalty, and the aggrieved party's right to take exceptions to the penalties and request a hearing. 29 C.F.R. § 580.4.

■ The regulation defining "Finality of Notice" is contained in 29 C.F.R. § 580.5, which provides:

If the person charged with violation does not, within 15 days after receipt of the notice, take exception to the determination that the violation or violations for which the penalty is imposed occurred, the administrative determination by the Administrator of the amount of such penalty shall be deemed final, and collection and recovery of the penalty shall be instituted....

If exceptions are timely filed, the case is referred to the Chief Administrative Law Judge for assignment to an ALJ for hearing. At the hearing, the aggrieved party and the Department have the opportunity to present documentary and live evidence. *See* 29 C.F.R. § 580.7. The Department has the burden of establishing that its interpretation of the law is correct. *See Marshall v. Jerrico, Inc.,* 446 U.S. 238, 247–48, 100 S.Ct. 1610, 1615–16, 64 L.Ed.2d 182 (1980). The ALJ's decision may "affirm, deny, reverse, or modify, in whole or in part, the determination of the Administrator." 29 C.F.R. § 580.12(c).

The regulations provide that the ALJ's decision constitutes the final decision of the Department unless there is a timely appeal to the Secretary, in which case the Secretary's decision is the final decision of the Department. 29 C.F.R. §§ 580.12(e), 580.16.

The collection of monetary penalties is not commenced until there is a final decision by the Department:

When the determination of the amount of any civil money . penalty provided for in this part becomes final under § 580.5 in accordance with the administrative assessment thereof, or pursuant to the decision and order of an [ALJ] in an administrative

proceeding as provided in § 580.12, or the decision of the Secretary pursuant to § 580.16, the amount of the penalty as thus determined is immediately due and payable to the U.S. Department of Labor. 29 C.F.R. § 580.18(a).

III. *Judicial Review of Agency Decisions*

■ The FLSA does not authorize or preclude judicial review of final agency decisions. The final decisions of the Department are therefore reviewable pursuant to Section 10(c) of the APA, which provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

## DISCUSSION

### I.

■ We hold that exercise of an optional appeal to a Department ALJ renders the initial Administrator's decision nonfinal for purposes of judicial review under the APA.

The dealers argue that filing optional exceptions and a request for an ALJ hearing does not eviscerate or delay their right to judicial review of the Administrator's decision, relying primarily on the language of

Section 10(c) of the APA and on *Darby v. Cisneros*, 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). Their argument fails as a matter of law.

The language of Section 10(c) of the APA states: "[A]gency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for ... any form of reconsideration...." Although this language might appear to support the dealers' position, the Supreme Court has found otherwise. Addressing precisely this language, the Court stated:

> Th[is] language has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review (unless, of course, specifically required to do so by statute ... ), but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal.

*Interstate Commerce Comm'n v. Brotherhood of Locomotive Engineers* 482 U.S. 270, 284–85, 107 S.Ct. 2360, 2368–69, 96 L.Ed.2d 222 (1987). In *Stone v. Immigration and Naturalization Service*, —— U.S. ——, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995), the Court cited the statutory interpretation as stated in *Locomotive Engineers* as the "longstanding construction of the APA language." *Stone*, —— U.S. at ——, 115 S.Ct. at 1542.[1]

Under this Supreme Court authority, a motion for reconsideration renders an agency action nonfinal under Section 10(c) of the APA. *See also Bellsouth Corp. v. Federal Communications*, 17 F.3d 1487 (D.C.Cir. 1994) (holding that federal court has no jurisdiction to review agency action when motion for reconsideration is still pending before agency). There is no qualitative difference between a motion for reconsideration and an appeal to a superior agency authority for

---

1. In *Stone,* the Court held that under the Immigration and Nationality Act ("INA"), a timely motion for reconsideration of a Board of Immigration Appeals decision does not toll the running of the statute of limitations for filing an appeal to federal court. The Court clarified that its ruling "depart[ed] from the ordinary judicial treatment of agency orders under reconsideration," because Congress intended the INA to be

different from other judicial review statutes. —— U.S. at ——, 115 S.Ct. at 1543. The Court confirmed that a motion for reconsideration of an agency action under an ordinary judicial review statute, such as the APA, would render the action nonfinal and would toll the statute of limitations. *Id.* at —— —— ——, 115 S.Ct. at 1542–43.

purposes of finality; the initial agency decision may be modified or reversed in both types of administrative review. It follows that an intra-agency appeal to an ALJ, who has *de novo* review of the Administrator's decision, must similarly render the Administrator's decision nonfinal under the APA.

The dealers' reliance on *Darby* is unavailing. *Darby* held that a person aggrieved by an agency decision is not required to exhaust nonmandatory administrative remedies, such as filing an optional appeal to a superior agency authority, before seeking judicial review. Because the dealers did file an administrative appeal before seeking judicial review,[2] however, *Darby* is inapposite.

## II.

■■■■ The dealers' action is not otherwise ripe for judicial review. The Ninth Circuit uses two factors to determine whether a controversy is ripe for judicial review: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560 (9th Cir.1992) (applying factors set forth in *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967)), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993).

### A. *Fitness for Judicial Decision*

■■■ Whether an agency action is fit for judicial review depends on whether the agency action represents the final administrative work; finality must be interpreted in a pragmatic and flexible manner to ensure that judicial review does not interfere with the agency's decision-making process. *Dietary Supplemental*, 978 F.2d at 562.

The Administrator's decision was an interim determination that the dealers' employment of minor lot attendants violated child labor laws. The dealers' exceptions will be heard by an ALJ, who has *de novo* review. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 247–48, 100 S.Ct. 1610, 1615–16, 64 L.Ed.2d 182

(1980). Through this review process, the agency has the opportunity and authority to consider, change, and eventually finalize its position. Ruling at this time on whether the dealers violated Hazardous Occupation Order No. 2 or on the propriety of the penalty assessment would inappropriately interfere with the Department's intra-agency decision-making process before it is completed.

### B. *Hardship*

The dealers contend that immediate review is necessary because they have been assessed monetary penalties and have been "forced to terminate minor employees or otherwise modify their employment practices" to avoid risk of further penalties.

■■■ A showing of financial hardship, however, is insufficient to justify a finding of ripeness. *Dietary Supplemental*, 978 F.2d at 562. Even if it were sufficient, the dealers have not yet paid the penalties, as collection is stayed pending a final decision by the ALJ or by the Secretary if the dealers appeal thereto. The penalties also may be reduced or revoked entirely on administrative appeal. Speculation that the dealers will incur further monetary penalties if they do not change their employment practices, and if the ALJ or Secretary does not modify the Administrator's decision, is also insufficient to justify a finding of ripeness. *See id.* at 564 (finding risk of additional product seizures to be too speculative to warrant judicial intervention absent final agency action). Nor is the argument that minors will suffer hardship from lost job opportunities relevant; the ripeness inquiry focuses on whether delaying judicial review will impose hardships on plaintiffs, not on third parties. Having chosen to invoke the agency appeals process, the dealers have failed to provide sufficient justification for bypassing agency expertise and concurrently invoking the jurisdiction of the federal courts.

## III.

Our decision is sound policy. Having two government bodies simultaneously review an

---

2. Because the dealers did file an administrative appeal, the court is not required to decide whether filing an administrative appeal was required under the FLSA or under the Department's regulations promulgated thereunder.

agency action wastes scarce governmental resources. *See Bellsouth Corp.,* 17 F.3d at 1489 ("Even a modicum of concern for judicial economy militates strongly against concurrent [agency and judicial review]."). Further, simultaneous review poses the possibility that an agency authority and a court would issue conflicting rulings. Allowing judicial review in the middle of the agency review process unjustifiably interferes with the agency's right to consider and possibly change its position during its administrative proceedings. *See Dietary Supplemental,* 978 F.2d at 563 (stating that courts should not deprive agency of opportunity to apply its expertise and to correct errors or modify positions in course of proceeding). An appeal to a higher agency authority may also obviate the need for judicial review. *See Outland v. Civil Aeronautics Bd.,* 284 F.2d 224, 227 (D.C.Cir.1960) ("[W]hen the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary.").

We conclude that the district court properly dismissed the dealers' complaint for lack of subject matter jurisdiction.

*AFFIRMED.*